**John Thomas PEIFFER**

v.

**KING PONTIAC BUICK GMC, INC., et al.**

**No. Civ.A. CCB–99–2825.**

United States District Court, D. Maryland.

July 24, 2000.

---

Walter Samet of Samet and Samet, Baltimore, MD, for Plaintiff.

Daniel Karp of Allen, Johnson Alexander & Karp, Baltimore, MD, for Defendants.

### Memorandum and Order

GRIMM, United States Magistrate Judge.

This diversity auto-tort case has been referred to me for all proceedings, with the consent of the parties. *See* 28 U.S.C. § 636(c), Local Rule 301.4. Plaintiffs, Catherine Ann Gray Peiffer, John Thomas Peiffer, M.D. and their son, Thomas Charles Peiffer, (collectively the "Peiffers" or the "Plaintiffs") have sued the Defendants, King Pontiac, Buick, GMC Inc., Terry Lee Abiba and the Prudential Insurance Company, (collectively, the "Defendants") to recover for personal injuries allegedly sustained as a result of an automobile accident that occurred on October 20, 1996. Defendants have filed a motion to dismiss, or in the alternative for summary judgment, asserting that this court lacks subject matter jurisdiction to hear this case because each of the individual Plaintiff's claims fails to meet the $75,000.00 jurisdictional threshold of 28 U.S.C. § 1332. Additionally, Defendant King Pontiac also seeks summary judgment on the grounds that Defendant Abiba was not, as a matter of law, its agent, servant or employee, and therefore it cannot be liable for any negligence of his in driving the vehicle that is alleged to have caused the Plaintiffs' injuries. The motions are fully briefed and ripe, (paper nos. 14, 15, 18, and 19), and no hearing is necessary. Local Rule 105.6 (D.Md.1997). For the reasons stated below, the Defendants' motions are DENIED.

### A. Subject Matter Jurisdiction

■ Citing *Pupkar v. Tastaca*, 999 F.Supp. 644 (D.Md.1998), and *St. Paul Mercury Idem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), Defendants argue that, as a result of pre-

trial discovery in this case, it is now apparent that the damages claimed by each of the Plaintiffs are insufficient to pass the "legal certainty" test used to determine whether diversity claims meet the minimum jurisdictional threshold, currently $75,000. *St. Paul*, 303 U.S. at 289, 58 S.Ct. 586. Under this test, a district court is required to retain jurisdiction over a case where the damages assertedly fall below this jurisdictional minimum, if it determines that the amount of damages claimed in the complaint were alleged in good faith. *Id.* Good faith can be "negated only if [the district court finds] ... it was a legal certainty that, at the time of the complaint, the plaintiff could not recover the requisite amount." *Shanaghan v. Cahill,* 58 F.3d 106, 111 (4th Cir.1995) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

Relying principally on the decision of this court in *Pupkar v. Tastaca,* 999 F.Supp. 644 (D.Md.1998), Defendants argue that, as a result of the Plaintiffs' refreshingly candid discovery responses, it now is clear that Ms. Peiffer's special damages do not exceed $7,000.00, Dr. Peiffer's special damages do not exceed $2,000.00, and their son's special damages are below $3,500.00, and none of the Plaintiffs now claims permanent injuries. With the benefit of this 20–20 hindsight, Defendants assert that it is a legal certainty that, as of the time Plaintiffs filed their complaint, they could not recover the requisite jurisdictional amount, and, therefore, the damages alleged in the complaint— $1,000,000.00 for each Plaintiff—, were alleged in bad faith, and this case must be dismissed for want of subject matter jurisdiction.

In response, Plaintiffs argue that at the time the complaint was filed it did appear that permanent damages could be claimed, and it was not until thereafter that Plaintiffs learned differently. Plaintiffs also argue that, even without a claim for permanent injuries, it is reasonably possible that a recovery in excess of $75,000 could be obtained by each of them. Finally, they argue that if this case is dismissed, as Defendants request, they will be unable to pursue their claim in state court, since the accident occurred on October 26, 1996, more than three years ago, and a state claim would be barred by the statute of limitations.[1]

■ In *Shanaghan v. Cahill,* 58 F.3d 106 (4th Cir.1995), the Fourth Circuit adopted a two part test that governs the outcome of this case:

> First, the court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount. Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case. This is akin to the 'well-pleaded complaint' rule....
>
> Second, if some event subsequent to the complaint reduces the amount in controversy ... the court must then decide in its discretion whether to retain jurisdiction over the ... case.

*Id.* at 112 (citations omitted). The Court identified five factors to be used by the district court in the exercise of its discretion at the second step of the analysis: (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; (5)

1. As will be explained, *infra,* this is not correct.

whether the case presents some significant issue of state law best decided in state court.[2]  *Id.* at 112.

■ Applying the *Shanaghan* test I cannot conclude that, from a review of the face of the complaint itself, it is a legal certainty that the Plaintiffs' claims fall short of the jurisdictional amount, particularly as the complaint alleges permanent injuries for each Plaintiff.[3]  (Compl. at ¶¶ 8, 11, 14, Paper No. 1.)  Indeed, it was only after the taking of discovery that it became apparent that no claim for permanent injuries could be maintained, and the Plaintiffs' honest answers to the discovery inquiries which revealed this belies any bad faith in connection with the initial filing.  None-the-less, it is equally clear to me that, after conceding that they have no claims for permanent injuries, and, given their very modest special damages, there is no reasonable chance that the Plaintiffs will be able to recover in excess of $75,000.00 each for the claims that they continue to assert.  This reduces the amount in controversy below the jurisdictional minimum.  I, therefore, must decide whether or not to retain the case, or dismiss it, applying the five *Shanaghan* factors.

The first, fourth and fifth factors militate in favor of retaining jurisdiction.  This is a garden variety motor-tort case, presenting no novel issues of state law that should be decided in state court.  Further, most, if not all, of the discovery has been completed, and all that remains after disposing of the pending motions is to set a trial date and try the case.  It makes little sense to dismiss the case, only to have it be filed anew in state court, where it would not likely be concluded as promptly as if it remains in this Court.  The accident took place nearly four years ago. It will not take much time to try the case, and the parties are entitled to as prompt a resolution as reasonably can be afforded.

As for the second factor, I already have determined that there has been no bad faith on the part of the Plaintiffs in connection with their filing this case in federal court in the first instance.  This factor, too, militates in favor of the case remaining where it is.

■ Despite the Plaintiffs' obvious concern about their claim being time barred if it is dismissed and they must refile in state court, and the Defendants implicit concurrence with this conclusion, there is no statute of limitations issue in this case.  Maryland Rule 2–101, titled "commencement of action and process" states, at sub paragraph (b):

> Except as otherwise provided by stature, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and the foreign court enters an order of dismissal for lack of jurisdiction … an action filed in this State within 30 days after the foreign court's order of dismissal shall be treated as timely filed in this State.

It is not surprising that neither Plaintiffs nor Defendants cited this rule in their memoranda, as it sits, tucked away in se-

---

**2.** The approach taken by the Fourth Circuit has been questioned by other circuits, which have declined to follow it.  *See, e. g., Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118, 1121 (7th Cir.1998) ("We doubt that the [*Shanaghan*] decision comports with the diversity statute and the cases that interpret it …"); *Wolde–Meskel v. Vocational Instruction Project Community Services,* 166 F.3d 59, 63–4 (2d Cir.1999).  Nevertheless, the Shanaghan case is the law of this circuit, and, as was noted in that case "[j]ustice is better served by a jurisdictional rule that includes some measure of discretion for the district court." *Id.* at 112.

**3.** The present case is distinguishable from the Pupkar case, in which the court concluded that the Plaintiff's claim for $1,000,000 in damages was not in good faith.  *Pupkar,* 999 F.Supp. at 646.  The court had "no hesitation in agreeing with the defendant that bad faith [was] demonstrated as a matter of law on [the] record." *Id.*  I cannot conclude that the Plaintiffs' claims in this case were made in bad faith because the extent of their injuries was not known at the time the suit was filed.

rene obscurity, camouflaged by a title that gives no clue as to its existence, and sheltered from nearly all but inadvertent discovery. Despite its obscurity, it is clearly applicable to this case. The accident occurred October 20, 1996. Suit timely was filed in this court on September 17, 1999, within the applicable three year limitations period. Research has failed to disclose any Maryland statute that would render Rule 2–101(b) inapplicable. Accordingly, contrary to the Plaintiffs' fears, if this suit were to be dismissed, they would have 30 days from that date to file again in state court. Thus, the second factor does mot militate in favor of keeping this case in federal court, but, as stated above, the other four do. Accordingly, I will keep the case, and deny the Defendants' motion.

### B. King Pontiac's Motion for Summary Judgement on the Vicarious Liability Claim

■ Having reviewed the parties submissions on the Plaintiffs' vicarious liability claim against Defendant King Pontiac, it appears to me that there is a sufficient dispute of material fact regarding this issue, making summary judgment inappropriate. *See* FED.R.CIV.P. 56. King Pontiac's motion is therefore DENIED, without prejudice to its renewal at the conclusion of the Plaintiffs' case. FED.R.CIV.P. 50(a).

Accordingly, it is this 24th day of July, 2000, ORDERED that the Defendants' motion to dismiss or, in the alternative for summary judgment, is DENIED. Counsel will please contact my chambers to schedule a scheduling telephone conference call.